UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HOLLY WARD,

                Plaintiff,

                              **Hon. Hugh B. Scott**

                v.                    **18CV454**

                                      **CONSENT**

ANDREW SAUL, COMMISSIONER,        **Order**

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 9 (plaintiff), 16 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 8 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 19, reassignment Order of July 9, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Holly Ward," "plaintiff," or "claimant") filed an application for disability insurance benefits on July 9, 2014 [R. 162]. That application was denied initially. The plaintiff

appeared before an Administrative Law Judge ("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated November 8, 2016, that the plaintiff was not disabled within the meaning of the Social Security Act [R. 160]. The ALJ's decision became the final decision of the Commissioner on February 16, 2018, when the Appeals Council denied plaintiff's request for review [R. 1].

Plaintiff commenced this action on April 16, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 9, 16), and plaintiff duly replied (Docket No. 18). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 36-year-old as of her onset date of January 1, 2013, with a high school education, last worked as a cook helper (medium exertion work), baker helper (heavy exertion work), and a cashier (light exertion work) [R. 176, 162, 168, 175]. The vocational expert in this case opined that with her residual functional capacity (as described below) plaintiff could not return to that work [R. 175]. Plaintiff also worked part time as a pizza delivery person in 2013-14 but quit due to pain [R. 162, 168, 173]. The ALJ found that this work did not meet the standard for substantial gainful activity [R. 162].

She contends that she was disabled as of the onset date of January 1, 2013, with her claim continuing until March 31, 2016 [R. 162]. Plaintiff claims the following impairments deemed severe by the ALJ: degenerative disc of cervical spine [R. 162]. Plaintiff had surgery April 2013. Impartial medical expert Dr. Michael Lorber initially found that plaintiff met

Listing 1.04A due this surgery from Jan. 1, 2013, to Apr. 14, 2014 (or one year after surgery) [R. 166].

Dr. Darius Ghazi the impartial medical expert in the supplemental proceeding, however, found that Listing 1.04A was not met, except for period from January 1, 2013, to May 2013 (or late 2013) after recovery from surgery [R. 166-67, 59]. The ALJ credits Dr. Ghazi, finding that Dr. Lorber did not have all medical records, did not answer interrogatories, resulting in the ALJ having to call a supplemental hearing (and second impartial medical expert) [R. 167]. Defendant now argues that plaintiff does not challenge the ALJ's consideration of Dr. Lorber's findings (Docket No. 16. Def. Memo. at 14 n.5).

Plaintiff also claims other impairments deemed not to be severe by the ALJ: carpel tunnel syndrome [R. 163], sleep apnea [R. 163], tennis elbow [R. 163], bursae and tendon disorder of left shoulder [R. 163-64]. These conditions were all diagnosed by Dr. David Stahl, plaintiff's treating physician. She also claimed depression but the ALJ found that this was not severe [R. 164-66].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff had a second neck surgery in 2013 and had three disks removed; she then complained of pain in her left shoulder that continued to at least June 2015 [R. 602, 866]. For example, plaintiff was examined for shoulder pain on June 12, 2015; she had full range of motion but was diagnosed with left shoulder impingement syndrome [R. 602, 604]. During prescribed physical therapy of June 17, 2015, the physical therapist found plaintiff's left shoulder had limited range of motion consistent with impingement [R. 739-40]. On August 5, 2015, plaintiff reported tingling in her fingers and an MRI was performed [R. 609]. The examination

3

of the upper left shoulder found tendinopathy, degenerative changes, and a hypodense lesion [R. 610].

On January 6, 2016, Dr. Stahl completed a physical residual functional capacity questionnaire [R. 828, 171] and asserted what the ALJ termed "rather extreme functional limitations for listed diagnoses of chronic cervicalgia and left shoulder pain" [R.171]. Dr. Stahl found that plaintiff could walk only a city block before requiring rest [R. 829, 171-72], could stand for two hours in an eight-hour workday, stand or walk for less than two hours [R. 171, 829-30].

The ALJ, however, found that these limitations were not borne out by the objective evidence including Dr. Stahl's own treatment notes [R. 172, 509-63, 753-96]. The ALJ gave little weight to Dr. Stahl's January 2016 assessment [R. 175].

In response to the ALJ's interrogatories [R. 854-64], Dr. Stahl submitted a detailed narrative on March 16, 2016, that the ALJ later found contradicted the January 2016 assessment [R. 172, 866]. For the neck impairment, Dr. Stahl then found that plaintiff did not have tremors or muscle atrophy [R. 172, 866]. X-rays and MRI show post-operate changes to the C5-T1 spine [R. 866]. On her left shoulder pain, Dr. Stahl noted that x-rays on August 2013 was normal and an October 2014 MRI revealed only minimal infraspinatus tendinopathy with no evidence of rotator cuff tear [R. 172, 866-67]. He also noted that a treating orthopedist opined that no surgical intervention for shoulder pain [R. 172, 866]. Dr. Stahl noted the lack of tremors and muscle atrophy in her upper extremities and hands [R. 866]. On August 28, 2013, an x-ray was taken of plaintiff's left shoulder and it appeared normal [R. 866]. An MRI of that shoulder on October 13, 2014, revealed minimal infraspinatus tendinopathy and showed no evidence of

4

rotator cuff tear [R. 866]. Dr. Stahl reported that plaintiff was treated by two orthopedists who diagnosed left shoulder impingement syndrome [R. 866]. Plaintiff reported that physical therapy made her pain and symptoms worse and she stopped the therapy [R. 866-67]. A second MRI of that shoulder on August 15, 2015, showed tendinopathy at the distal supraspinatus tendon and did not show rotator cuff or labral tear [R. 867]. From these observations, Dr. Stahl concluded that due to plaintiff's neck movement "and to a lesser degree shoulder movement coupled with chronic tenderness in her upper back concentrated over the left scapular region, I feel she is limited in doing physical tasks repetitively" [R. 867].

During plaintiff's supplemental August 12, 2016, ALJ hearing, Dr. Ghazi testified, upon review of plaintiff's medical record (including Dr. Stahl's last report) that the medical record did not support plaintiff's claims of severe pain [R. 172, 59, 55]. Dr. Ghazi found that plaintiff did not meet Listing 1.04 because she had spondylosis but without reflect and sensory changes [R. 56]. The doctor found that before her surgery, plaintiff's condition did meet Listing 1.04 but following surgery "the pressure on the nerve roots of the cervical spine [were] effectively relieved" [R. 57]. Dr. Ghazi opined that plaintiff could lift 10 pounds frequently and 20 pounds occasionally; sit, walk, and stand for 6 hours or longer [R. 62-65]. The doctor would not impose any serious limitation on her other than slight limitations on moving her neck [R. 62-65]. Dr. Ghazi testified that Dr. Stahl's based his opinion on plaintiff's statements of her condition [R. 65-66]. The ALJ gave great weight to Dr. Ghazi's opinion [R. 175], noting that Dr. Ghazi is a board-certified orthopedist, he thoroughly explained his opinion which was based upon the medical evidence of record, and his testimony "directly disputes the functional capacity

5

assessment of Dr. Stahl" which was based upon what plaintiff told Dr. Stahl about her pain [R. 172].

Dr. Samuel Balderman evaluated plaintiff on September 15, 2014, and noted "rather mild to moderate clinical abnormalities that do not support the claimant's allegations of severe symptoms and functional limitations" [R. 564, 567, 172]. Dr. Balderman found that plaintiff had moderate limitations for frequent changes in position of the head and moderate limitations in reaching, pushing, and pulling due to left shoulder pain [R. 567]. The ALJ gave some weight to Dr. Balderman's opinion, accepting the finding of moderate limitations for frequent changes in position of her head [R. 175, 567]. The ALJ, however, found that the record as a whole did not support greater limitations on her shoulder for reaching, pushing, and pulling due to pain, concluding that left shoulder pain was deemed non-severe [R. 175].

The ALJ found recognized plaintiff may have experienced pain but found that "mild to moderate pain is not in itself, incompatible with the performance of sustained work activity" [R. 174]. The ALJ then found that the objective medical evidence and plaintiff's testimony did not establish abnormalities that would preclude her from working consistent with her residual functional capacity [R. 174]. The ALJ concluded that plaintiff had a residual functional capacity to perform light work with additional limitations [R. 176], that plaintiff could lift 10 pounds frequently and 20 pounds occasionally; she could sit, stand, or walk for 6 hours or longer, with normal breaks; plaintiff must avoid constant movement of the neck, hyperextension of the neck, and avoid movement of the neck in extreme ranges of motion side to side, and not climb ladders [R. 167].

As previously noted, the ALJ adopted the vocational expert's opinion and found that plaintiff was unable to perform past relevant work as a cashier, baker helper or cook's helper [R. 175]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as a price marker, mail clerk, or sales attendant (all light exertion work) [R. 176-77]. As a result, the ALJ held that plaintiff was not disabled [R. 177].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.   General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or

her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

II.   Pre-March 2017 Treating Physician Rule

Plaintiff's July 2014 claims predate changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. § 404.1527 (2017); see also 20 C.F.R. § 416.927, such as this one. The current version of the SSA regulations eliminates the treating physician's rule, but for applications filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claim filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial

9

evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.) (emphasis added).

III.  Use of Interrogatories

Social Security hearings are non-adversarial, Gold v. Secretary of Health and Human Servs., 463 F.2d 38, 43 (2d Cir. 1982). An ALJ does not face a claimant in an adversarial posture, Peed v. Sullivan, 778 F. Supp. 1241, 1245 (E.D.N.Y. 1991); McAninch v. Astrue, No. 09CV969, 2011 U.S. Dist. LEXIS 116236, at *48 (W.D.N.Y. Oct. 6, 2011) (Telesca, J.), "rather, the ALJ has a duty to ensure that the claimant receives 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the [Social Security] Act,'" Peed, supra, 778 F. Supp. at 1245 (quoting Gold, supra, 463 F.2d at 43); McAninch, supra, 2011 U.S. Dist. LEXIS 116236, at *48. Judge Telesca emphasized that "when an ALJ confronts a claimant with a negative bias and without impartiality, he or she undermines the essentially judicial nature of an ALJ's duties," McAninch, supra, 2011 U.S. Dist. LEXIS 116236, at *48-49.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the ALJ improperly rejected the opinion of treating physician Dr. David Stahl (Docket No. 9, Pl. Memo. at 15-21). She believes that the ALJ asked 100 interrogatories of Dr. Stahl making this administrative discovery process adversarial (id. at 15, 19-21; Docket No. 18, Pl. Reply Memo. at 5 [R. 854-66; see also R. 866-67 (Dr. Stahl's response)], see McAninch, supra, 2011 U.S. Dist. LEXIS 116236, at *50, 2011 WL 4744411, at *16. Next, she contends that the ALJ did not properly evaluate the state agency doctor, the supplemental impartial expert Dr. Ghazi, or the evaluation of consultative examiner Dr. Balderman [R. 172-73, 175] (Docket No. 9, Pl. Memo. at 21-23).

Defendant replies that the ALJ reasonably weighed the medical opinions in this record (Docket No. 16, Def. Memo. at 14-30). As for the use and number of interrogatories here, defendant argues that this case is distinguishable from McAninch, supra, 2011 U.S. Dist. LEXIS 116236, because there was no indication of the ALJ's hostility in posing these queries (id. at 29), also noting that the ALJ did not fault Dr. Stahl for not tracking the interrogatories in his answers by providing narrative answers instead (id. at 29 n.9). Plaintiff replies that it was the same ALJ as in McAninch, supra, 2011 U.S. Dist. LEXIS 116236, and provided in both cases the same excessive number of interrogatories (Docket No. 18, Pl. Reply Memo. at 5).

I. Assessing Medical Opinions

    A. Treating Physician Dr. Stahl's Opinion

At issue here is the ALJ's consideration of findings of the treating physician as opposed to the rest of the medical record, including consultative examinations. To compel acceptance as

controlling weight, the treating physician's opinion has to be <u>well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence</u>, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (emphasis added) (see Docket No. 16, Def. Memo. at 15). Review of this record, including Dr. Stahl's findings, shows that Dr. Stahl's January 2016 assessment [R. 828] is more extreme than the record. Dr. Stahl noted plaintiff's shoulder pain but this condition was deemed to be non-severe by the ALJ [R. 164] without objection by plaintiff (see Docket No. 18, Def. Memo. at 25 & n.7). Plaintiff's shoulder pain appears to be from impingement syndrome and plaintiff still had full range of motion [R. 602, 604]. Dr. Stahl's March 2016 interrogatory answer contradicts the assessment rendered two months before [R. 866-67]. The ALJ thus had sufficient evidence in assessing Dr. Stahl's opinion. Plaintiff's motion for judgment (Docket No. 9) on this ground is **denied**.

    B.    Consultative and Agency Doctors

Plaintiff argues that the ALJ erred in depending solely upon the opinion of Dr. Ghazi and not upon Drs. Stahl or Balderman (Docket No. 9, Pl. Memo. at 22). Plaintiff also contends that the ALJ selectively adopted portions of Dr. Balderman's opinion to support the ultimate conclusion denying disability (id. at 21).

The ALJ has the discretion in choosing between "properly submitted medical opinions," <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998); <u>Heaman v. Berryhill</u>, 765 F. App'x 498, 500 (2d Cir. 2019); see also <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1039 (2d Cir. 1983) (Docket No 16, Def. Memo. at 15). It is not the role of this Court in judicial review to weigh disparate medical opinions; that is the function of the ALJ, <u>see</u> <u>Smith v. Berryhill</u>, 740 F. App'x 721, 726 (2d Cir. 2018) (court "accept[s] the weight assigned to inconsistent opinions as a proper exercise of the

ALJ's discretion") (quotations and citations omitted). Substantial evidence supports the ALJ's reliance upon Dr. Ghazi's opinion. That doctor was an impartial medical expert who reviewed plaintiff's medical record as of the supplemental ALJ hearing [R. 54-55]. Dr. Ghazi noted that plaintiff's neck operation limited her range of motion in her cervical spine [R. 60-62]. It is not clear how these would affect her ability to walk and stand, despite Dr. Stahl's finding. Dr. Ghazi found that plaintiff could sit and stand for 6 hours or longer with appropriate breaks [R. 62-63].

As for the ALJ's consideration of Dr. Balderman's opinion [R. 564], plaintiff objects to not accepting the moderate limitation on her left shoulder. But the left shoulder was noted in the rest of the record due to impingement and not deemed to be severe [R. 602, 604, 739-40]. As defendant notes (Docket No. 16, Def. Memo. at 25 n.7), plaintiff did not appeal from the Step Two determination that this shoulder pain was not deemed severe. An August 2013 x-ray [R. 164, 866] of her left shoulder was normal and an October 2014 MRI scan (after Dr. Balderman's September 2014 evaluation) [R. 164, 729, 756, 866] revealed only minimal infraspinatus tendinopathy with no evidence of rotator cuff tear (Docket No. 16, Def. Memo. at 25-26). Thus, the ALJ had sufficient evidence to assess Dr. Balderman's opinion as to plaintiff's shoulder.

Therefore, plaintiff's motion (Docket No. 9) on this ground also is **denied**. The ALJ had sufficient evidence to support consideration of these medical opinions.

II.  Use of Interrogatories

Plaintiff contends that that the ALJ developed the record in an adversarial manner by posing the interrogatories [R.854-64] (Docket No. 9, Pl. Memo. at 19). She argues that, with subparts, ALJ asked Dr. Stahl over 100 questions in the interrogatories (id. at 20).

The ALJ posed 22 main questions in the interrogatories over eleven pages [R. 854-64] and Dr. Stahl answered in two single-spaced pages, although not in interrogatory-answer format [R. 866-67]. As defendant notes (Docket No. 16, Def. Memo. at 29 n.9), the ALJ did not reject Dr. Stahl's answers as not complying with the format. McAninch considered ALJ bias or partiality in posing additional questions to that claimant's doctor, see 2011 U.S. Dist. LEXIS 116236, at *48-49. The same ALJ was in both matters, see id. at *3; cf. [R. 177]. Judge Telesca noted in McAninch that the questionnaire constituted cross-examination of the doctor by the ALJ in the absence of that claimant or counsel and without the means to conduct a redirect examination, id. at *50. In that case, that claimant was not served with the questionnaire and there was no indication to the doctors why additional questions were being posed, id. In McAninch, the ALJ rejected the reports of the treating physicians in part for failing to respond to the interrogatories, id. at *43-44. The ALJ there posed 59 questions (including subparts) over seven pages each to two treating sources, id. at *45-48. Judge Telesca found that the record up to that point was complete and there was no need for the ALJ to seek supplemental information, id. at *51-52. He then found that "the ALJ committed a clear error of law and assumed an improper adversarial role by demanding that Plaintiff's treating medical providers answer these extensive questionnaires, which amounted to ex parte cross-examination

14

and were contrary to the Act's remedial and beneficent purpose of the act," id. at *53 (citation omitted).

In the present case, Dr. Stahl (without objection) responded to the interrogatories with narrative answers [R. 866-67]. The ALJ did not penalize plaintiff for Dr. Stahl's answers unlike what happened when the doctors did not answer interrogatories in McAninch, 2011 U.S. Dist. LEXIS 116236, at *44. The ALJ asked for supplemental information from Dr. Stahl [see R. 854] because the initial impartial medical expert Dr. Lorber failed to respond when asked to explain further and clarify his testimony, causing the ALJ to conduct a supplemental hearing [R. 167]. Unlike in McAninch, plaintiff's attorney was copied on the interrogatories [R. 864, 11] and could have objected. Instead, Dr. Stahl answered [R. 866]. The cause for the supplemental interrogatories was not Dr. Stahl. The ALJ used the doctor's answers in considering the doctor's earlier findings [R. 172]. This is not as adversarial and biased as the questions posed in the McAninch interrogatories.

As a result, plaintiff's motion for judgment (Docket No. 9) is **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 9) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 16) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
October 4, 2019